UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

HARRISON R. RITCHIE,

        Plaintiff,

v.                                                            CAUSE NO. 1:22-CV-379 DRL-JEM

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

        Defendant.

## OPINION AND ORDER

Harrison R. Ritchie appeals the Social Security Commissioner's final judgment denying him supplemental social security income. Mr. Ritchie requests a remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court vacates the administrative decision and remands for further proceedings.

## BACKGROUND

Mr. Ritchie suffers from a variety of impairments including fibromyalgia, lower back pain, acute pain of the right knee, idiopathic peripheral neuropathy [R. 331], diffuse arthralgia, anxiety [R. 333], fatty liver [R. 400], depression, chronic gastric ulcer [R. 404], nocturia, colon wall thickening, a history of kidney stones, hyperlipidemia [R. 405], an aortic heart murmur [R. 406], cervical spondylosis, myalgia [R. 461], GERD, and Gilbert disease [R. 497]. Mr. Ritchie filed for Title XVI benefits on March 23, 2017 [R. 1126], alleging disability since January 23, 2014 [R. 1127].[1] Because Mr. Ritchie was found to be disabled on August 10, 2019 [R. 1127], this case concerns the period from March 23, 2017 through August 9, 2019

---

[1] Mr. Ritchie initially filed for benefits under Title II on May 2, 2014, but that case is in its own appeal process [R. 1126]. This case deals only with the benefits applied for on March 23, 2017.

[18 at 2; R. 1127]. He was 47 years old when he applied for Title XVI benefits [R. 1138]. He has a high school education [R. 1138]. He has past relevant work [R. 1137].

The Administrative Law Judge (ALJ) denied Mr. Ritchie's initial application on July 25, 2018 [R. 1126], and the Appeals Council denied his request for review [R. 1]. Mr. Ritchie then appealed to the district court, which remanded that decision on May 7, 2021 [R. 1242]. The Appeals Council sent the case to a new ALJ [R. 1243]. After a hearing, the new ALJ, William D. Pierson, again denied his application [R. 1123]. In a June 29, 2022 order, the ALJ determined that Mr. Ritchie was not under a disability from March 23, 2017 to August 9, 2019 [R. 1140] because there were sufficient available jobs in the national economy that he could have performed considering his age, education, work experience, and residual functioning capacity (RFC) [R. 1138]. Mr. Ritchie then reappealed [1].

## STANDARD

The court has authority to review Appeals Council decisions under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Appeals Council sent the case to a new ALJ on remand, the court evaluates the ALJ's decision as the Commissioner's final word. C.F.R. § 404.984. The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [his] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

2

DISCUSSION

An individual is disabled when he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis, asking whether (1) the claimant is currently employed; (2) the claimant's impairment or combination of impairments is severe; (3) his impairments meet or exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) the claimant can perform his former occupation, if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity (RFC); and (5) the claimant cannot perform other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *Id.*

At step one, the ALJ determined that Mr. Ritchie had not engaged in substantial gainful activity since his application date, so he proceeded to step two [R. 1129]. There, the ALJ determined that Mr. Ritchie had several severe impairments, including lumbar degenerative disc disease with radiculopathy, fibromyalgia, idiopathic peripheral neuropathy/tarsal tunnel syndrome, cervical spondylosis/myalgia, migraine headaches, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder [R.

1129-30]. The ALJ also determined that Mr. Ritchie had many non-severe impairments: Charcot-Marie-Tooth disease, hypertension, Vitamin D deficiency, hyperlipidemia, nocturia, kidney stones, esophagitis, and Gilbert's disease, among others [R. 1130]. At step three, the ALJ decided these impairments didn't meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 1131].

The ALJ thus proceeded to step four, where he concluded that Mr. Ritchie had the residual functioning capacity to perform light work as defined in 20 C.F.R. § 416.967(b), subject to certain modifications [R. 1133]. He noted that Mr. Ritchie was "limited to lifting, carrying, pushing and pulling 10 pounds frequently and occasionally" and "should not climb ropes, ladders or scaffolds" [R. 1133]. He explained that Mr. Ritchie needed to avoid slippery services, heights, dangerous machinery, and hazards like open flames or fast-spinning blades [R. 1133]. Mr. Ritchie was "limited to simple, routine and repetitive tasks consistent with unskilled work … that can be learned through short demonstration" [R. 1133]. The ALJ also found that Mr. Ritchie could not handle constant gross manipulation or fine manipulation but could perform tasks that required those skills frequently [R. 1133]. Accordingly, the ALJ concluded that Mr. Ritchie was unable to perform his former occupation or past relevant work [R. 1137-38].

Finally, at step five, the ALJ considered Mr. Ritchie's age, education, work experience, and residual functioning capacity to conclude that there were 913,000 jobs in the national economy that he could perform: router (518,000), marker (110,000), and housekeeping cleaner (285,000) [R. 1139]. Based on this analysis, the ALJ concluded that he wasn't under a disability from March 23, 2017 to August 9, 2019 [R. 1140].

Mr. Ritchie appeals the administrative decision and challenges the RFC determination primarily on three grounds: (1) the weight given to state agency decisions; (2) assuming in the administrative decision the role of doctor rather than seeking an additional medical consultation; and (3) the lack of a

logical bridge between the final RFC determination and the evidence on his cane use and fibromyalgia. The court handles each in turn after recalling briefly the law in this area.

"Residual functional capacity [] is an assessment of an individual's ability to do sustained work." *Jarnutowski v. Kjakazi*, 48 F.4th 769, 773 (7th Cir. 2022). The strength functions an ALJ must consider include "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 774. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (quotation and citation omitted). "[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ. [The] ALJ [] must connect the evidence to the conclusion through an accurate and logical bridge." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (internal citation omitted).

"ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). "ALJ[]s may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis." *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (citing *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996)). "Playing doctor" is "a clear no-no," as is giving "meager attention" to conditions. *Goins v. Colvin*, 764 F.3d 677, 680-81 (7th Cir. 2014). Unsupported inferences about conditions based on lack of treatment may constitute playing doctor. *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (ALJ impermissibly concluded that not taking insulin meant that the claimant did not have a severe problem).

When considering physician records, the administrative decision must address more than just portions of the reports. *Myles*, 582 F.3d at 678. When evaluating whether an ALJ has made impermissible medical determinations, courts look to whether the ALJ made "independent findings to fill the gaps in

the record" and whether any of "the ALJ's limitations conflict with a medical source of record." *Holsinger v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 53840, 27-28 (N.D. Ind. March 29, 2018). In cases where further medical information is needed, ALJs have a "responsibility to recognize the need for further medical evaluations … before making [] residual functional capacity and disability determinations." *Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010). Though ALJs may request additional medical consultations, they aren't always required to order additional examinations if the record is sufficiently developed. *See Skinner*, 478 F.3d at 844.

Mr. Ritchie argues that the combination of playing doctor and selectively choosing evidence from the record led to the lack of a logical bridge between the administrative decision's RFC conclusions and the evidence. ALJs aren't required to consider every piece of evidence, but administrative decisions cannot ignore contrary lines of evidence or cherry-pick evidence. *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). The administrative decision can't "simply *ignore* record evidence [that] predates the alleged onset date," appreciating that evidence that "pertains to a temporally discrete event" may have only limited relevance. *Misener v. Astrue*, 926 F. Supp.2d 1016, 1034 (N.D. Ind. 2013).

A. *Weight Given to State Agency Decisions.*

Mr. Ritchie says the administrative decision (citing R. 1137) gave only "some weight" to the May and August 2017 state agency determinations. ALJs generally give more weight to medical opinions from treating sources, 20 C.F.R. § 404.1527(c)(2), but must evaluate every medical opinion they receive regardless of its source, 20 C.F.R. § 404.1527(c). "Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence . . . as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *see also* 20 C.F.R. § 404.1527(e) (noting that the rules in § 404.1513a apply to evidence from federal or state agency medical or psychological consultants).

6

It is unclear to the court why only "some weight" is problematic, as both state agency decisions found Mr. Ritchie not disabled [R. 131, 146]. The ALJ explained that he had "fully considered the medical opinions and prior administrative medical findings" [R. 1137]. Neither agency document is a medical record from treatment, and neither was the only factor relied upon here. Mr. Ritchie cannot want more weight to be given to these findings, leaving the court to interpret his complaint as a general lack of evidence. But these findings weren't the only evidence cited in the administrative decision.

The decision examined Mr. Ritchie's medical records and cited to Dr. James Ehlich's conclusion that his fibromyalgia had improved [R. 1136; R. 454]. It noted that in June 2017 Mr. Ritchie's medical records indicated that he was "improved" and "feeling better" [R. 496]. The decision also cited physical therapy records indicating that Mr. Ritchie had stopped reporting for treatment [R. 1136, R. 473]. The physical therapy records also observe "[h]istronics … throughout treatment" and that Mr. Ritchie "[d]emonstrated symptoms … somewhat out of proportion w/current pathology" [R. 476]. As the decision recalled [R.1136], medical records from January 2018 reported a normal range of motion [R. 503]. The decision documented Mr. Ritchie's impaired gait, not completely ignoring his difficulties [R. 1136]. In evaluating Mr. Ritchie's experience, the administrative decision considered Mr. Ritchie's questionnaire from July 2017 and his testimony from June 2022 describing his difficulty holding things, headaches, and numbness and pain in his legs [R. 1134].

Additionally, the decision relied on inconsistencies in the record regarding treatment [R. 1135]. The ALJ acknowledged that Mr. Ritchie used a cane in 2016 [R. 1135; 367] and observed previous periods of limited range of motion in the neck area but explained that March 2017 x-rays were normal [R. 1135]. He observed that on occasion, there was "minimal evidence the claimant pursued" treatment recommended by his physician [R. 1136]. The administrative decision described a lack of treatment for headaches after January 2018 and no evidence of mental health treatment after January 2018, in addition to a lack of invasive treatment for the fibromyalgia and no evidence of spine or fibromyalgia treatment

7

after January 2018 [R. 1136]. On this record, the court finds no issues with the "some weight" given to the state agency decisions.

      B. *Playing Doctor.*

      Mr. Ritchie argues that the ALJ erred by making independent medical findings inconsistent with medical diagnoses, thereby "playing doctor" when determining the RFC. Mr. Ritchie faults the ALJ for failing to rely on medical evidence and draws a parallel to *Boyles v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 198595 (N.D. Ind. Nov. 1, 2022). This isn't *Boyles*. In that case, the court found that it was possible that the ALJ disregarded all medical evidence, leaving an evidentiary deficit. *Id.* at 11. There isn't any indication that happened here. In fact, the ALJ explicitly considered medical opinions, including those from the state agencies [R. 1137].

      Mr. Ritchie also cites *Willis v. Acting Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 116679 (N.D. Ind. June 30, 2022). In *Willis*, the ALJ found most of the record's medical opinions "not persuasive" due to a perceived inconsistency "with the available medical evidence." *Id.* at 8. The ALJ didn't explain her reasoning and failed to adopt any medical opinions, creating again that evidentiary deficit. *Id.* at 10.

      Here, the ALJ did not disregard medical opinions wholly or create an evidentiary gap that he then had to play doctor to fill. He considered state agency medical opinions [R. 1137]. And despite what Mr. Ritchie argues, considering a lack of treatment when holistically analyzing the record wasn't playing doctor. The ALJ must look at the record and make determinations about whether a claimant is disabled. So long as the ALJ has considered prominent lines of evidence, including reasonable explanations for why a claimant has not pursued treatment, or pursued treatment other than as directed, *see, e.g., Myles*, 582 F.3d at 677-78, an absence of treatment may create a fair inference that the claimant had no need for treatment precisely because he has no significant condition or disability to address during that period. Drawing that conclusion alone doesn't constitute impermissibly playing doctor.

8

Mr. Ritchie briefly suggests that the ALJ also erred by not requesting a physical examination to remedy a lack of sufficient medical evidence. But it isn't clear what information an examination completed in June 2022 would have provided to assist the ALJ in evaluating Mr. Ritchie's condition from March 2017 to April 2019. And the record on appeal has left this point void in development. Regardless, the ALJ did not impermissibly play doctor; he evaluated and relied on the evidence before him.

C. *Logical Bridge.*

Mr. Ritchie alleges that the administrative decision fails to build a logical bridge between the record evidence and the final RFC determination by omitting portions that support his disability claim. Mr. Ritchie cites his cane use, his EMG results, and his fibromyalgia. In fairness, the government's response leaves something to be desired—it merely counters that the administrative decision "noted" these things and presumes from there that nothing else need be said because this meets what the government calls the "minimum articulation standard." Not even the government takes a stab at the administrative decision's reasoning; and "noting" something and building a logical bridge aren't the same. *See Stewart*, 561 F.3d at 684. Perhaps there was a logical explanation from these noted conditions to the conclusion, but the court cannot trace it, nor has anyone presented it on appeal.

First, Mr. Ritchie claims that the decision largely disregarded information about his cane use. The administrative decision found that "the record does not demonstrate use of a cane after March 23, 2017" [R. 1135]. On this record, this seems just wrong; and the government offers no defense of it. Mr. Ritchie testified at his June 2022 hearing that he experienced radiculopathy with pain in his legs and that he has used a cane since 2014 or 2015 [R. 1163-64]. His primary physician, Dr. Bangash, prescribed the cane [R. 1164]. He reported that he uses the cane everywhere and cannot stand without leaning against something [R. 1164].[2] The administrative decision acknowledged Mr. Ritchie's impaired gate and prior cane use [R.

---

[2] Whether Mr. Ritchie uses the cane all the time is unclear. In his 2022 testimony, he answered one question with the qualification "if I got my cane," implying that he does not use it all the time [R. 1166].

9

1135], but it seems to have passed over continuous cane use after March 2017. This is particularly interesting when the administrative decision noted his limping and diffuse tender points when seeing his rheumatologist in June 2017, even with a normal motor examination and normal extremity range of motion [R. 1136]. At minimum, the administrative decision needed to explain inconsistencies between his activities of daily living and the medical evidence, *see Stewart*, 561 F.3d at 684; and, failing that, why his RFC accommodates light work, including lifting and carrying, or standing for substantial time periods six hours in an eight-hour workday, *see Martin*, 950 F.3d at 375. Perhaps it will, but the administrative decision omits this explanation because it assumed there was no need for cane usage after March 2017.

Second, Mr. Ritchie relies on an EMG result and his testimony to argue that the administrative decision failed to draw a logical bridge from the EMG to the RFC finding. This builds on the prior point. The ALJ briefly addressed the EMG results, noting that the test showed chronic bilateral C7 radiculopathies, mild carpal tunnel syndrome, and chronic left leg radiculopathy [R. 1135]. Mr. Ritchie testified about the pain in his legs and how his radiculopathy causes his legs to go numb, thereby necessitating his use of a cane. The administrative decision concludes that the EMG results support the RFC finding but doesn't explain why or how [R. 1137], particularly when it seems to discount the claimant's testimony about the intensity, persistence, and limiting effects of his cane use (together with radiculopathy) based in part on the assumption that there was no record of cane use after March 2017 [R. 1135]. That Mr. Ritchie "most often" had negative straight leg raising and normal extremity range of motion offers little to build a bridge when in the same breath the administrative decision identifies his impaired gait after March 2017 [R. 1135].

Third, Mr. Ritchie asserts that the administrative decision overlooks the extent of his fibromyalgia. He argues that the decision selectively plucked evidence from the record by including only evidence that his fibromyalgia had improved and omitting evidence of his condition's severity. "An ALJ must consider the longitudinal record of a fibromyalgia patient because symptoms can wax and wane."

*Gebauer v. Saul*, 801 F. Appx. 404, 410 (7th Cir. 2020). The decision mentions fibromyalgia four times in its RFC analysis—twice to note reported improvement and twice to point to a lack of treatment [R. 1136-37]. Mr. Ritchie provides several citations to the record that contradict this and go unaddressed by the administrative decision. He cites treatment notes that document weakness [R. 362], a feeling "like he has been beaten up," hurting all over, and being "sore all over" [R. 367]. Medical records from 2016 note "a lot of chronic pain" and a "severely impaired" gait [R. 439]. He also testified in 2022 that he was unable to walk more than 15 or 20 feet before needing to rest [R. 1165], even in 2017 and 2018 [R. 1166]. In 2017, he was still reporting "stabbing" pain to a physician treating his fibromyalgia [R. 449], and his active fibromyalgia still required pain management in June 2017, despite its improvement [R. 454].

By reporting only improvements, without any comment on the lingering symptoms and pain, the decision failed to address the evidence that qualified the improvement and contradicted the implications of the lack of treatment after January 2018. Although "[a] claimant's assertions of pain, taken alone, are not conclusive of a disability," *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020), the ALJ cannot select only the positive evidence without at least addressing the negative, *Martin*, 950 F.3d at 375. Without an explanation of this and other issues that here that bear on an RFC determination, the court cannot conclude that this administrative decision offers the logical bridge expected under the law.

## CONCLUSION

Accordingly, the court GRANTS Mr. Ritchie's request for a remand [1] and REMANDS the Commissioner's decision.

SO ORDERED.

March 5, 2024               *s/ Damon R. Leichty*
                            Judge, United States District Court

11